IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| Plaintiff, | * | |
| | * | Criminal Case No.: SAG-24-076 |
| v. | * | |
| DWONE BRYANT | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The United States has charged Defendant Dwone Bryant with one count of possession of a firearm and ammunition by a prohibited person, one count of possession with intent to distribute a controlled substance, and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF 1. Mr. Bryant has filed a motion to suppress evidence recovered upon his arrest. ECF 42. On January 8, 2026, this Court held a suppression hearing and heard evidence and argument on that motion. ECF 56. On February 25, 2026, this Court heard additional argument on the suppression motion as well as several other motions filed by the parties, including a defense motion to exclude the testimony of a proposed government witness, ECF 77. ECF 89. This Court has now considered all of the evidence, filings, and argument regarding the motions to suppress and exclude. For the reasons explained below, both motions will be denied.

I. **BACKGROUND**

The following facts are derived from the testimony and exhibits presented at the suppression hearing.

On November 6, 2023, Lieutenant Vincenzo Julio of the Baltimore Police Department was viewing live footage of the Lexington Market area from a CitiWatch camera. ECF 61 at 14:24–

16:20. He focused on an individual wearing a black coat with a fur-lined hood. *Id.* at 20:2–4. According to Lieutenant Julio, he focused on this individual because a confidential informant had informed police that the individual was carrying a firearm. *Id.* at 20:5–8; 24:11–20; 31:4–9.

Lieutenant Julio then observed on the CitiWatch camera this individual pass packets of suboxone to another individual in exchange for United States currency. *Id.* at 20:13–21:1. Lieutenant Julio relayed what he had observed to one of his detectives, Detective Aliyu Dabo, and told Detective Dabo that they had probable cause to make an arrest based on a drug transaction. *Id.* at 48:7–19. At approximately 12:54 PM, Detective Dabo and several other detectives arrested the individual wearing the black coat with the fur-lined hood, whom police later identified as Mr. Bryant. *Id.* at 48:20–25; 56:17–20. Upon his arrest, the detectives searched Mr. Bryant's person and located suboxone, MDMA, and a firearm. *Id.* at 58:4–7. On Detective Dabo's body-worn camera footage, Detective Dabo can be heard informing Mr. Bryant that he is under arrest for "CDS sales." *Id.* at 55:3–5; 57:21–58:2.

Lieutenant Julio testified that he had relayed what he had observed regarding the drug transaction before the arrest was made. *Id.* at 48:20–25. At one point, Lieutenant Julio testified that he had relayed this information over the radio. *Id.* at 21:5–12. At another point, he testified that he had relayed the information either over the radio, or, more likely, in person, and when asked whether he may have done so over text, he confirmed that he may have. *Id.* at 49:1–7. Detective Dabo, in turn, testified that he had received "a message" from Lieutenant Julio that an individual had engaged in a drug transaction and that Lieutenant Julio had described the individual and sent him a picture of the individual. *Id.* at 54:5–21.

That day, Lieutenant Julio, Detective Dabo, and several other detectives communicated with each other using a group text message. *Id.* at 32:4–33:11; 37:7–15; 49:8–13. At 11:17 AM,

2

Detective Dabo sent a message in that group saying, "CI says he has a gun, he saw it on him earlier," and, five minutes later, he sent a photo of an individual wearing lined jeans and what appears to be a black coat with a fur-lined hood and a message saying, "Brown fur." Defendant's Exhibit N. At 11:32 AM, Lieutenant Julio responded with a zoomed-in photo of an individual with lined jeans and what appears to be a gray coat. *Id.*; Defendant's Exhibit P. Defendant Julio testified that the photos showed the same individual. ECF 61 at 35:7–36:15. Later, at 1:00 PM, Lieutenant Julio sent a message saying, "He was selling suboxone it looked like," a video with a still image of the drug transaction from the CitiWatch footage, and a photo of the detectives arresting Mr. Bryant. Defendant's Exhibit M.

Other than the messages sent at 1:00 PM, these text messages were not disclosed to Mr. Bryant before the suppression hearing. ECF 61 at 24:18–26:2. In explaining why he had not disclosed them, government counsel represented that his recollection from his witness preparation conversation with Lieutenant Julio was that Mr. Bryant had not been the individual whom police had suspected of possessing a firearm that day. *Id.* at 25:6–21; 29:21–30:3. Rather, government counsel had been under the impression that the individual suspected of possessing the firearm had been wearing a gray coat and that Lieutenant Julio had sent a video of the drug transaction that he had observed before the detectives had made the arrest. *Id.* at 25:6–21.

## II.    LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357

(1967) (footnote omitted). Because warrantless searches are presumptively unreasonable, the government bears the burden of demonstrating the lawfulness of such a search. *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013). It must do so by a preponderance of the evidence. *United States v. Small*, 944 F.3d 490, 502 (4th Cir. 2019).

### III. DISCUSSION

#### A. Motion to Suppress Evidence from Mr. Bryant's Arrest

Mr. Bryant argues that the detectives who arrested him lacked probable cause to do so because Lieutenant Julio did not relay to them that he had observed a drug transaction until after the arrest had already occurred. Mr. Bryant notes that Lieutenant Julio did not send the text message saying, "He was selling suboxone it looked like," and the video with the still image of the transaction until after the detectives had already made the arrest. He further argues that to the extent that Lieutenant Julio testified that he had relayed that information before the arrest, his credibility has been impeached in light of government counsel's recollection of their witness preparation conversation that, contrary to Lieutenant Julio's testimony, the individual suspected of possessing the firearm had not been Mr. Bryant.

Search incident to arrest constitutes an exception to the warrant requirement. *Chimel v. California*, 395 U.S. 752, 762–763 (1969). The arrest, however, must be supported by probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Under the collective knowledge doctrine, an officer is justified in taking a particular action if instructed to do so by another officer who has communicated sufficient information that would justify him in taking the action himself. *United States v. Massenburg*, 654 F.3d 480, 492, 495 (4th Cir. 2011). Here, because Lieutenant Julio is the officer who observed the narcotics transaction and had probable cause to arrest Mr. Bryant, he

4

would have had to communicate "sufficient information" to Detective Dabo prior to the arrest to justify the arrest and subsequent search incident.

This Court acknowledges that there was some inconsistency regarding what the witnesses recalled from November, 2023. Lieutenant Julio testified inconsistently about how he had conveyed what he had observed to Detective Dabo. Moreover, Detective Dabo's testimony that Lieutenant Julio had sent a photo of Mr. Bryant when relaying the information about the drug transaction suggests that he was referring to the messages sent at 1:00 PM, indisputably after the arrest. Additionally, Government counsel's recollection of his witness preparation conversation with Lieutenant Julio not only differed from the testimony, in terms of whether Mr. Bryant was the individual suspected of possessing the firearm, but also suggested that Lieutenant Julio had relayed what he had observed from the CitiWatch footage by sending the video of it after the arrest.

Notwithstanding those facts, however, this Court finds that Lieutenant Julio relayed what he had observed about the drug transaction to the detectives before they arrested Mr. Bryant. The body-worn camera footage shows that Detective Dabo informed Mr. Bryant during his arrest that he was under arrest for "CDS sales." Thus, regardless of what the witnesses recall from that day, the footage offers contemporaneous evidence of what the detectives who arrested Mr. Bryant knew at the time that they arrested him. In light of this evidence, this Court finds that the inconsistencies described above most likely resulted from the over two years since the arrest as well as the witnesses' efforts to refresh their recollection of that day from the text messages, which reflect only some of their total communications from that day.

Ultimately, this Court concludes that the government has shown by a preponderance of the evidence that Lieutenant Julio observed Mr. Bryant engage in a drug transaction over the CitiWatch camera and relayed what he had observed to the arresting detectives in some manner

5

other than text message before Mr. Bryant's arrest. Because the arresting detectives therefore had probable cause to arrest Mr. Bryant, Mr. Bryant's motion to suppress evidence from that arrest must be denied.

### B. Motion to Exclude Proposed Expert Witness Testimony

This Court now turns to the defense motion to exclude the proposed government expert witness, Special Agent Bryan Fields. The government proposes to call SA Fields to testify, based on his experience as an agent with the Drug Enforcement Administration, about drug distribution practices and the relationship between firearms and drug trafficking. ECF 77-1 at 4–6. The government plans to offer opinions from SA Fields, in summary, that (1) the quantities and packaging of buprenorphine and methamphetamine seized from Mr. Bryant are inconsistent with personal use and consistent with drug distribution; (2) that the currency recovered from Mr. Bryant's person is consistent with a person engaging in street level drug sales; (3) that the possession of multiple types of CDS and the possession of a loaded firearm alongside CDS are consistent with drug distribution; (4) that the location of the firearm on Mr. Bryant's person, its proximity to the drugs and money, and the type of firearm possessed are all consistent with a street-level drug distributor using a firearm to protect himself and his drugs, drug money, and territory during drug trafficking. *Id.* at 6–7.

Mr. Bryant raises several issues in his motion seeking to exclude the expert testimony. First, he argues that he should be entitled to a *Daubert* hearing to determine whether SA Fields has sufficient "scientific, technical, or other specialized knowledge" to assist the jury and whether SA Field's testimony is based on sufficient facts and reliable principles. However, it is well recognized that the type of experiential expert testimony the government offers does not rely on scientific methods. *See United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Whether SA Fields

has sufficient experience to offer his proposed opinions can be ferreted out during voir dire at trial, but an additional hearing is not needed.

Second, he contends that several of the proffered opinions are not relevant to the issues at the trial. This Court, for the most part, disagrees. At this stage, this Court finds that only three of the proposed opinions proffered on pages 4–6 of ECF 77-1 are irrelevant: the opinion regarding the potential for abuse of buprenorphine or methamphetamine in large quantities, the opinion regarding drug dealers' use of electronic devices or cell phones (as there is no evidence of such conduct in this case), and the opinion regarding drug dealers' possible use of firearms to collect debts. This Court is also skeptical that the opinion regarding drug traffickers "working in groups" will be relevant but will defer on that issue until the government's case at trial. The remainder of the proposed testimony is relevant to the issues the jury will need to decide at trial. This Court will of course give the jury appropriate instruction on how to evaluate expert testimony (and will consider language proposed by the parties on that point).

Third, Mr. Bryant contends that the proposed testimony is "impermissible profile evidence," ECF 77 at 11, analogizing the testimony SA Fields proposes to offer about the relationship between firearms and drug trafficking to "drug courier profile" evidence often excluded by courts as substantive evidence at trial. Mr. Bryant offers no precedent for courts excluding the type of evidence the government proposes to offer in this case, and there are a multitude of cases in which such evidence has been admitted. *See, e.g.*, *United States v. Askew*, 98 F.4th 116, 123 (4th Cir. 2024) (describing expert testimony that, in general, "firearms are a very significant tool of the [drug] trade"); *United States v. Bell*, 711 F. App'x 702, 705 (4th Cir. 2017). Expert testimony on these issues is permissible because the behavior of drug dealers and drug users is not within the purview of an average layperson. *See United States v. Gastiaburo*, 16 F.3d 582,

589 (4th Cir. 1994); *United States v. Pomranky*, 165 F. App'x 259, 260 (4th Cir. 2006) ("Expert testimony about common practices of drug dealers is routinely admitted in drug cases in order to help the trier of fact understand the mechanics of drug trafficking). The testimony that is proposed to be offered by SA Fields is not akin to the "drug courier profile" evidence, which suggests that a particular combination of otherwise innocuous facts could be proof of criminal activity. SA Fields's proposed testimony simply assists the jury in understanding the import of evidence of criminal activity (the CDS and firearm) recovered in this case.

Finally, Mr. Bryant argues that this Court should exclude the testimony under Rule 403 because its probative value is substantially outweighed by a danger of unfair prejudice, misleading the jury, or wasting time. This Court again disagrees. Expert testimony of this nature is routinely admissible, and there are no facts in this case that would render the proffered testimony particularly prejudicial. This Court will clearly instruct the jury that it is not to consider the criminal conduct of anyone other than this defendant in determining whether the government has met its burden of proof and will clearly describe the elements the government must prove as to the § 924(c) charge.

Accordingly, Mr. Bryant's motion to exclude will be denied.

## IV.  CONCLUSION

For the reasons stated above, Mr. Bryant's motion to suppress, ECF 42, and motion to exclude, ECF 77, will be denied. A separate Order follows.

Dated: February 26, 2026                                          /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge